## PEDRO ANTONIO CANALES, Complainant,

*v.*

## BASILIO GONZALEZ, Respt.

---

San Juan, Equity, No. 169.

1. A mortgage for "82.84 cuerdas, more or less," includes an excess of 25.87 cuerdas when the facts show such to have been the intention of the parties.

2. Actual boundaries on the ground will control recitals as to quantity.

3. A possessory title to part of the land in a stranger, dated after the mortgage, cannot defeat the foreclosure, and will be canceled of record.

Opinion filed March 21, 1908.

---

*Mr. Thomas D. Mott, Jr.,* for plaintiff.

*Messrs. Charles Hartzell* and *Rodriguez Serra,* for defendants.

RODEY, Judge, delivered the following opinion:

This is a bill in equity to foreclose a mortgage. It was filed on the 9th of October, 1902,—about five and a half years ago. It is another of the neglected causes on the docket of

this court, about which we have had occasion several times to express our views.

One of the first things done in the case was to issue an injunction and appoint a receiver. Thereafter a decree *pro confesso* was taken, and, in due time, a final decree entered, and a master appointed to make a sale of the property described in the mortgage, which in due time he did, but not until a considerable controversy over the confirmation of his report had taken place. Soon thereafter another contention arose over the reports of the receiver; and finally, after much delay, the decree and sale were set aside and the cause restored to the docket for further pleading. About this time the receiver complained of being interrupted and interfered with by the principal respondent, Basilio Gonzalez, who was claiming to act for one Federico Gomez. The former, although he was the person who made and signed the mortgage, contended that some 24 or more cuerdas of the land in possession of the receiver was not included in the mortgage that was being sought to be foreclosed against him, and that his principal, Gomez, had purchased the same in the meantime, and had empowered him to take possession of it, and to gather the coffee and other crops therefrom. A spirited contest arose over this matter, which resulted in a large amount of expense and the arrest of about a dozen persons, including both Gonzalez and Gomez, for contempt as to the observance of the orders of the court in the premises, which finally developed into, and was docketed as, a criminal case (No. 321), and made quite a record of itself. This latter case finally came to an end by Gomez being obliged to pay for all of the property he had removed from or wasted on the piece of land in question. With the costs, it amounted to something like $600, on the payment of which the fine of $700, that had been imposed upon

Gomez, was remitted. It has, of course, taken a good deal of our time to read all of this record and learn the facts and circumstances surrounding the cause, besides having to read the transcribed notes and the exhibits introduced at the hearing recently had.

During the course of the proceedings, several of the parties died and the cause was revived in the names of their heirs, and guardians *ad litem* were appointed where the same was proper, to protect the interests of infants who happened to be parties.

The main obstacle to a speedy settlement of the cause after the issuance of the restraining order, and the appointment of the receiver, was the claim of this man Federico Gomez y Martinez. He claimed that the receiver, under the order issued to him, took possession of too much land; that the mortgage described but 82 and a fraction of cuerdas, while the receiver took possession of about 108 cuerdas, which included from 24 to 26 cuerdas of land situated south of a road known as "camino de la finca," and which was wholly separated from, and, as he claims, has no connection with, and is not included in, the land described in the mortgage. The complainant has always denied this, and insists that it is part and parcel of the land described in the mortgage. Gomez claimed to have purchased this piece of land after the date of the mortgage, from the owners of the same. His proofs in that regard will be hereinafter referred to. After the settlement of these contempt proceedings, the court, at the suggestion of the respective counsel, sent out an independent surveyor to map the ground and make a report with reference to the same. He was instructed to take with him the original, or a copy of the original, mortgage, and the contending parties were ordered to give him what information they chose on the ground while he was making the survey. The

:surveyor did so proceed to the land in controversy, and duly .mapped and platted the same, and made a report in the premises, all of which became part of the record. The cause then remained without much of anything being done for some time, and, after the present incumbent of this bench arrived in Porto Rico, Gomez renewed his efforts for the possession of these 24 cuerdas of land, which it appears are almost entirely planted in coffee, and, as complainant alleges, are a valuable portion of the land in controversy. In that behalf Gomez filed :a petition, praying that the land he thus claims to have purchased should be set apart to him, and that the receiver be ordered to give him possession of it.

Finally, on December 7, 1907, a full hearing was had, at which time all parties entered into a stipulation in open court that, notwithstanding the pleadings might not be in proper :shape for that purpose, still the whole controversy should be then submitted to the court on the merits for final adjudication :as to the rights of all parties concerned, the decision to be binding upon all, with reference to the title to the land, as fully :as though the pleadings had all been rewritten or amended in that behalf.

It transpired that, during the years when this suit was pending, a creditor of the complainant, because of a large debt due him, had proceeded in the proper local district court under a procedure known to the local law, and procured to be adjudicated to himself, because of the debt thus due him from the original complainant, all of the latter's rights in and to the mortgage debt in question, and therefore on November 18, 1907, a supplemental bill with a transcript showing the said proceedings in the district court annexed to it as an exhibit, was filed, praying that this new owner of the *res* or mortgage right be substi-

tuted in place of the original complainant or his heirs, and be subrogated to and be declared entitled to all. of the benefits which might come to the complainant's heirs under any final decree in the premises. It appears that the original complainant some time previously, but after these proceedings were had in the local court, had been murdered by some unknown person out at Lares, where the land in controversy is situated. On December 7, 1907, at the opening of the hearing, counsel for the original complainant, T. D. Mott, Jr., Esq., consented and requested that this substitution be entered of record, and that the new owner of the mortgage right, one Francisco Blanes y Massanet, should be subrogated to all the rights of his former client or his heirs in the premises. Opposing counsel were all present at the time, and in like manner consented to the substitution, which was accordingly considered as done, said T. D. Mott, Jr., continuing to appear as counsel for this substituted complainant in the cause, there appearing, after inquiry in that behalf by the court, to be no reason why this should not be permitted.

The facts out of which the controversy arose are about as follows: In the latter part of the year 1896 and the beginning of 1897, at Lares, Porto Rico, where all the parties concerned in this controversy live, the original respondent, Basilio Gonzalez y Lopez, who was a coffee planter, etc., found himself rather heavily involved financially, but possessed of some real estate and bills receivable. He owed three or four firms of that vicinity considerable sums of money, amounting in all to about fourteen or fifteen thousand pesos, and it seems that he also owed an open account and was indebted in other ways to the original complainant, Pedro Antonio Canales, which latter person, it seems, was, at that time, a man of some substance in

Canales v. Gonzalez.

that community. Gonzales, early in 1897, transferred all of the land that is now here in controversy to complainant, Canales, in consideration of the latter's becoming responsible for the debts in question, and further transferred other property to him, including some bills receivable, in payment of what he owed him personally. This latter transaction amounted to some 11,000 pesos and ended with the transfer.

It seems that Canales did not at the time have the ready money to pay these debts for Gonzalez, so he gave his notes to Gonzalez's creditors for the same, running through several years in the future, with a whole lot of future interest added in, and thus carrying compound interest with the principal after default, all of which sums he afterwards paid, and, it seems, with additional interest. Then, in order to secure himself, he transferred all of the property in controversy, which he had just received from respondent, Gonzalez, back again to him, under date of March 26, 1897, and, in and by the same instrument, reserved to himself a mortgage on all of the land thus reconveyed, with its improvements and crops, for the entire purchase money, which was fixed in the mortgage at 40,000 pesos, which was to be paid to him in instalments running something like seven years into the future, and which instrument also contained the usual severe Spanish conditions then prevailing as to high rate of interest (from 15 to 18 per cent), all of which was added in. The instrument also contained provisions for large sums to cover costs in case of default, etc.

At the time of this transaction it was no doubt contemplated by the parties that Gonzalez, by reason of the long time given him, even though the conditions were severe, would be able to pay up and redeem the property; but, unfortunately, the great hurricane of 1899 devastated the coffee estates in question, and,

Canales v. Gonzalez.

in fact, nearly all the coffee estates on the island, to such an extent as that it became impossible for any person in that vicinity who was indebted to any extent, to meet his obligations. Gonzales, in company with most of his neighbors, probably including the complainant himself, became much embarrassed, and seems to have become embittered against the complainant, and was not only removing valuable buildings, machinery, and other movable property from the estate, but was not delivering the coffee crop thereof to the complainant, as he had agreed to do, and was generally committing waste on the premises, so that the complainant took steps through the local courts to prevent his actions in that behalf, and finally filed his bill in equity in this court to foreclose the mortgage and secure the relief heretofore mentioned.

From all of the evidence in the case it is manifest that Gonzalez had been, for a good many years, in the exclusive possession of all of the land here in controversy, and was not only living upon it, but was cultivating the most of it as a coffee estate. He had received, as it appears, practically all of this land from his father's estate. His father had quite a large family, and owned not only this estate, but several other pieces of land in that vicinity. The old gentleman, during his lifetime, divided his estate, and gave several of the children pieces of land and to others of them he gave money. It is not very clear just how the title to all the land in controversy left the old man's estate, but it is certain that this son Basilio obtained title of record to four pieces of it, and had absolute possession for many years previous to the date of the mortgage of the remainder of it, and that he probably purchased the disputed portion of it from the other heirs to whom the old gentleman had promised it, but did not make deeds for it. The pieces that he

has unquestioned record title to contain respectively 14, 21.85, 11.48, and 35.51 cuerdas, or a total of 82.84 cuerdas.

In the spring of 1897, when, in the first instance, the respondent himself transferred this land to the complainant, he described each of the respective pieces of the land as containing the aforesaid quantities "more or less," and totaled the whole acreage as 82.84 cuerdas, also "more or less;" but, in addition to this, when he gave complainant the mortgage in question on March 26, 1897, he went on and described the land also by metes and bounds. Thereafter, during this trial, when the surveyor before referred to, went upon the ground, and, in the presence of all the parties concerned (Canales, Gonzalez, and Gomez), surveyed the same, taking the calls of the deed for his guide, in addition to such minor information as he obtained from the parties or from some of them in the presence of the others, as to points that could not otherwise be ascertained very well, he surveyed the land, finding most of the boundary calls actually on the ground, and the tract was found to contain 108.71 cuerdas, or a surplus of 25.87 cuerdas over the acreage mentioned in the mortgage.

We are satisfied beyond doubt from the evidence, and we so find, that the respondent, Basilio Gonzalez, when he gave this mortgage to the complainant, knew that he gave this surplus of 25.87 cuerdas of land to him; in fact, that was then and still is the most valuable piece of the property, and had the most coffee upon it. We are further satisfied from the evidence, and also so find, that he intended to so give it to him and to include it in the mortgage, and that the reason he made the deed as he did, with the "more or less" clause as to several of the specific parcels and as to the totaled area, and then supplemented it with the metes and bounds description, was because he

Canales v. Gonzalez.

did not happen at that time to have record title for the surplus of 24 or 25 cuerdas which came to him from his father's estate or which he had purchased from the other heirs, and of which he had been in exclusive possession for many years, and he evidently knew that the registrar would not permit the transfer or the mortgage unless he, Basilio Gonzales, the original respondent, showed record title in himself to such surplus, which it was not at that time convenient for him to do.

Later on, after Gonzalez had defaulted as to the mortgage, and when complainant was about to eject him from the whole of the estate, as we believe, and we so find from the evidence, he entered into a conspiracy with this man Federico Gomez, a neighbor of his there, to defeat complainant's recovery as to this surplus of 25 cuerdas, because he believed there was a doubt as to its being included in the description in the mortgage, and then pretended to be acting as Gomez's agent in keeping the possession of that part of the estate, as against the complainant, and as justifying him in carrying off, ostensibly for Gomez, the coffee and other crops, besides generally committing waste thereon, in the name of Gomez; but, in all of which doings, he was thwarted by the action of this court in forcing Gomez to return to the estate, or pay for, all of the property thus taken, as before mentioned.

On the hearing, much evidence was taken and several exhibits introduced, which showed that this man Gomez pretended to buy this surplus after the appointment of the receiver in this case, from descendants or representatives of two of the other heirs of respondent's father, but it was clearly proved that he never got a proper deed from either of them for it, and some of the letters intended to be used as such were shown to have been signed within a few months last past by the children

Canales v. Gonzalez.

of some of those heirs. About a year after the receiver was put in charge of the property, this man Gomez, evidently acting for or at the instigation of Gonzalez, procured an expediente posesorio for 19 cuerdas of these 24 or 25 from a local tribunal, under a law permitting that to be done. In doing this he falsely represented to the court that he had been in possession of that land for one year before, when in truth he never was in possession of it, or any part of it, at any time, save when he was in contempt of court, as stated, and we so find. Nor has anybody save the respondent, Basilio Gonzalez y Lopez, been in possession of it, according to the evidence, for many years previous to the making of the mortgage out of which this controversy arose.

It is in evidence that the whole estate here in controversy is not worth, and probably will not bring, at public auction, to exceed eight or ten thousand dollars at the present time, and therefore, as both the original parties are dead, and there is probably nothing to be obtained out of the controversy for the heirs of either of them, as the property will probably not, in any event, pay what is due, and as the complainant has lost his rights to his creditors,—there is no great necessity for exact calculation as to the sum due between the original parties. We are free to say that an examination of the rather voluminous record satisfies us that the transaction in the beginning was outrageous in its harshness and unconscionable in its terms as against the respondent, Gonzales, for we are thoroughly satisfied from positive evidence introduced in the case, and we so find, that complainant never paid out for respondent to exceed 18,000 pesos on account of this mortgage, and we are satisfied that two or three thousand pesos of that was compound interest, but respondent cannot be held responsible for that, as it went

Canales v. Gonzalez.

to others. He did not in fact pay the 18,000 pesos out, save in smaller sums, through a series of years. Therefore we feel that it would be unconscionable to permit recovery here for more than 18,000 pesos, with interest thereon for the eleven years the mortgage has been running,— or, to reduce it to gold at the statutory 60 per cent, recovery will be permitted for $10,800, with 6 per cent per annum interest upon the same for eleven years, or $7,128 interest, making a total of $17,928, for which sum, with the costs, recovery will be permitted.

We therefore find that the complainant is entitled to recover the land as described in the mortgage, and which, as described by its outer bounds, we hold to contain 108.71 cuerdas of land, as per the Saldaña map, and we find that Federico Gomez has no title to any portion of the same, and is not entitled to the possession thereof, but that the same in truth and in fact belonged to Basilio Gonzalez y Lopez, and must go with the title in this mortgage.

We further hold that the expediente posesorio which Gomez obtained for the portion of the land in controversy should be canceled, and that the registrar of property shall, after the sale to be made under the decree herein, register the whole of the said 108.71 cuerdas of land in favor of the purchaser, whoever such person may be.

We further hold and order that the receiver herein must at once make a final accounting with this court, and that the surplus of money in his hands, if any, shall be applied to the reduction of the sum total of the debt and interest as above set out, and that all of the land in controversy, as described in the surveyor's map on file herein as aforesaid, be sold at as short a day as may be, to satisfy the mortgage described in the bill,

for the benefit of the owner thereof, the substituted complainant, José Blanes y Massanet.

Further, because of all the controversy that has heretofore existed in the cause, and of the feeling said to exist in the community where the land is situated, the United States marshal of this island will, at the proper time, under a proper order, be appointed to make the sale.

Therefore let the receiver and his counsel be notified to prepare and file his account in the premises for the approval of the court, and let a proper interlocutory or other decree be prepared and entered herein, containing all proper provisions fully to carry out the views and decision of the court in all respects as herein expressed.